UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1992

ACME TILE AND TERRAZZO CO.
AND ROMAN TILE & TERRAZZO CO.,

Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.



ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF THE
NATIONAL LABOR RELATIONS BOARD



Before

Torruella, Chief Judge, 

Cummings* and Cyr, Circuit Judges. 



Girard R. Visconti, with whom Visconti & Boren Ltd. was on 
brief for petitioners.
Corinna L. Metcalf, Attorney, National Labor Relations 
Board, with whom Frederick L. Feinstein, General Counsel, Linda 
Sher, Associate General Counsel, Aileen A. Armstrong, Deputy 
Associate General Counsel, Charles Donnelly, Supervisory 
Attorney, and Joseph J. Jablonski, Jr., Attorney, National Labor 
Relations Board, were on brief for respondent.



June 25, 1996


 

* Of the Seventh Circuit, sitting by designation.

CUMMINGS, Circuit Judge. The present controversy has CUMMINGS, Circuit Judge. 

been before this Court once before. It arises out of the actions

of various employers alleged to have violated the National Labor

Relations Act, 29 U.S.C. 151 et seq. ("Act"). The Board 

originally found that the employers violated the Act by

conditioning continued employment on union membership and

terminating employees who failed to join the union. We remanded

to the Board to make additional findings. NLRB v. Acme Tile & 

Terrazzo Co., 984 F.2d 555 (1st Cir. 1993). After doing so, it 

reached the same conclusion. Satisfied that the Board made the

necessary additional findings and that those findings are

supported by substantial evidence, we now hold that the Board's

order should be enforced.

I.

Acme Tile and Terrazzo Co. and Roman Tile and Terrazzo

("Companies") are members of the Ceramic Tile, Marble and

Terrazzo Contractors Association of Rhode Island Corp.

("Association"), a multi-employer association representing

contractors headquartered in Rhode Island. The Association is

the authorized collective bargaining representative of the

Companies. The Companies employ both "finishers" and "setters."

Until December 1988, the finishers were represented by Local 36

of the Tile, Marble, Terrazzo Finishers, Shopworkers & Granite

Cutters International Union ("Local 36"). Local 36 was party to

various pre-hire agreements with the Association, the most recent

of which was effective April 1, 1988, through March 31, 1989.

-2-

The setters were represented by Local 1 of the International

Union of Bricklayers and Allied Craftsmen of Rhode Island

("Bricklayers Union"). The Association and the Companies were

also parties to collective bargaining agreements with the

Bricklayers Union, the most recent of which was effective May 1,

1988, through April 30, 1990.

In 1988, Local 36's International Union affiliated with

the International Brotherhood of Carpenters ("Carpenters Union")

and Local 36 was newly designated "Local 36-T" of the Carpenters

Union. A struggle between the Bricklayers Union and the

Carpenters Union ensued. In early 1989, David Barricelli, the

Bricklayers Union Business Manager, approached Local 36-T about

merging into Local 1 of the Bricklayers Union. Without

assurances that their local would retain its autonomy, Local 36-T

rejected the proposal. Attempting to "change their minds,"

Barricelli met with Local 36-T members in February 1989. He told

them that if they did not join the Bricklayers Union, he would

speak to the local bricklayer unions in Massachusetts and

Connecticut and tell them that the Local 36-T finishers were

carpenters and should not be permitted to work in those

jurisdictions. The members were unpersuaded. Barricelli

subsequently wrote the local bricklayer unions and asked them to

replace the finishers represented by the Carpenters Union with

helpers belonging to the Bricklayers Union. He sent copies of

the letters to the Companies.

-3-

On March 29, 1989, the Association members signed an

addendum to its contract with the Bricklayers Union covering the

tile finishers; the addendum became effective April 1, 1989.

Representatives of the Companies were told that Barricelli was

claiming jurisdiction over all finishers' work and that

Bricklayer Union setters would not work with the Carpenters Union

after March 31, 1989. Thus it appears that the Companies felt

some compulsion to sign the addendum to ensure that the setters

would not strike. The agreement that the addendum modified

contained a union security clause, which required that employees

of the Association's members become members of the Bricklayers

Union within eight days of the agreement's execution.

After signing the addendum with the Bricklayers Union,

the Association and the Companies notified Local 36-T that they

were terminating their collective bargaining agreement with Local

36-T. Furthermore, the Companies notified their employees that

they would have to contact the Bricklayers Union business agent

and be referred by the Bricklayers Union to be permitted to work

on Monday, April 3, 1989. None of the finishers showed for work

that day and the Companies replaced them with finishers from the

Bricklayers Union.

Local 36-T filed unfair labor practice charges against

the Companies, alleging that the Companies forced the finishers

to join the Bricklayers Union, contributed unlawful support to

the Bricklayers Union, and terminated their employees because

they refused to join the Bricklayers Union. In April 1991, an

-4-

administrative law judge issued a decision and recommended order,

concluding that the Companies had not violated the Act. The ALJ

found that the Companies told the employees on March 31, 1989,

that they had to secure a referral from the Bricklayers Union by 

April 3 if they wanted to continue working. The National Labor

Relations Board ("Board") reversed the ALJ, holding that the

Companies had committed unfair labor practices. In so holding,

the Board erroneously stated that the ALJ had credited testimony

that on March 31 the Companies required their employees to join 

the union by April 3. The Board ordered that the employees be

reinstated and compensated.

The Board thereafter sought enforcement in this Court.

We noted that the Act requires a seven-day grace period for

employees to join an employer-recognized union in the

construction industry. 29 U.S.C. 158(f). Thus only if the

Companies required the employees to join the union by April 3 -- 

two days into that grace period -- did they violate the Act.

Despite the existence of testimony that could have supported the

Board's conclusion, it relied instead on an erroneous reading of

the ALJ's opinion, as noted above. We therefore vacated the

Board's order and remanded "for a determination of whether the

employers explicitly or implicitly conditioned continued

employment on immediate membership in the Union." Acme Tile, 984 

F.2d at 556.

The Board remanded the case to the ALJ for

clarification. The ALJ reaffirmed its original decision that the

-5-

Companies did not violate the Act, and the Board subsequently

reversed. The Board concluded that the Companies violated

Section 8(a)(1) and (2) of the Act, 29 U.S.C. 158(a)(1) & (2),

by conditioning continued employment on immediate union

membership in derogation of the seven-day grace period contained

in Section 8(f), 29 U.S.C. 158(f). It also concluded that the

Companies violated Section 8(a)(3) and (1), 29 U.S.C. 158(a)(3)

& (1), of the Act by discharging employees who refused to join

the union. The Board again ordered, among other things,

reinstatement with backpay. This appeal followed.

II.

We will enforce an order by the Board only if it

correctly applied the law and if its factual findings are

supported by substantial evidence on the record. Penntech 

Papers, Inc. v. NLRB, 706 F.2d 18, 22-23 (1st Cir.), cert. 

denied, 464 U.S. 892 (1983). The Act grants employees the right 

to "form, join, or assist labor organizations" and to refrain

from such activity, 29 U.S.C. 157, and makes it an unfair labor

practice for employers to "interfere with, restrain, or coerce

employees in the exercise" of those rights. 29 U.S.C. 

158(a)(1). The Act specifically prohibits employers from

discriminating "in regard to hire or tenure of employment or any

term or condition of employment to encourage or discourage

membership in any labor organization." 29 U.S.C. 158(a)(3).

The Act makes an exception to this broad prohibition that permits

an employer to enter certain union security contracts requiring

-6-

union membership as a condition of employment. 29 U.S.C. 

158(a)(3) (proviso). But this exception is itself limited by the

Act: a union security agreement in the construction industry may

only require union membership "after the seventh day following

the beginning of such employment or the effective date of the

agreement, whichever is later." 29 U.S.C. 158(f). Thus an

employer commits an unfair labor practice if it terminates an

employee during the seven-day grace period for failure to join

the union despite the existence of an otherwise valid union

security agreement. In addition, an employer who coerces an

employee into joining a union may also commit an unfair labor

practice under 29 U.S.C. 158(a)(2) if the coercion amounts to

unlawful "support" for that union.

The Board concluded that the Companies violated

Sections 158(a)(1), (2), and (3). Key to that conclusion, and

contrary to the ALJ's decision, was its factual finding that the

Companies "implicitly conditioned their employees' continued

employment on immediate membership in the Bricklayers Union."

318 N.L.R.B. No. 47, 1995 WL 496836. The Board reasoned that the

Companies' requirement that the employees obtain a "referral,"

"approval," or "clearance" from the union was tantamount to

requiring immediate membership in the union, because the

employers' statements would "reasonably and foreseeably lead

their employees to believe that membership in the Bricklayers

Union by April 3 was required in order to continue working." Id. 

-7-

The Companies initially contend that the Board did not

comply with this Court's remand instruction from the original

appeal. On remand, we required the Board to make a determination

as to whether the Companies had explicitly or implicitly

conditioned continued employment on union membership. 984 F.2d

at 556. In its original opinion, the Board had essentially

stated that the Companies made union membership an explicit

condition, but we found that determination to be based on an

erroneous reading of the ALJ's findings. We noted that testimony

existed that might demonstrate an explicit condition, but that

the Board had not relied on that testimony. It is quite apparent

from any fair reading of the Board's latest decision that it

complied with this Court's remand instructions. Deciding not to

base its holding on the testimony just mentioned, which was

contradicted by other testimony, the Board found that the

evidence supported a finding that the Companies had implicitly

conditioned continued employment on union membership. The Board

complied with our remand instructions to the letter, and the only

remaining question is whether its determination was supported by

substantial evidence.

On the issue of substantial evidence, the Companies

first argue that the Board lacked any basis for rejecting the

ALJ's finding that the Companies merely advised their employees

of the procedures under the new contract rather than coerced them

into joining the Bricklayers Union. The ALJ concluded that the

employers' statements were simply observations of the natural

-8-

consequences of the union security provision in the new contract

and that the employees were merely informed of how the new

procedures would affect them when they returned to work the

following Monday. While it is true that we afford the ALJ

deference on questions of witness credibility, see Universal 

Camera Corp. v. NLRB, 340 U.S. 474, 496-497 (1951), we do not 

agree with the Companies that the Board necessarily rejected a

credibility determination of the ALJ to reach its conclusion, nor

would it necessarily be dispositive if it had. Id. (implying 

that deference to the factfinder is subsumed in the substantial

evidence test). The Board accepted testimony credited by the ALJ

to the effect that the Companies had not expressly conditioned

continued employment on union membership -- that the Companies

only required a "referral," "approval," or "clearance" from the

union. In determining that even these statements amounted to an

unlawful implicit condition, the Board relied on additional

evidence regarding the circumstances in which these statements

were made. The Board did not reverse any credibility findings

made by the ALJ.

Furthermore, substantial evidence supports the Board's

findings on the circumstances surrounding the statements and

their implicit message to the employees. The Board first turned

to the governing contract and noted that there was no contractual

reason why the Companies needed to require a "referral" from the

Union. The contract provided that employers could freely hire or

reject qualified journeymen at a job site. Thus requiring a

-9-

"referral" from the Union implied that the employees would have

to join the Bricklayers Union in order to remain on the job. The

Board then recounted the Bricklayers Union's ongoing campaign to

force all finishers into the Union. Both employers and employees

were generally aware of Barricelli's efforts in this regard,

including his threatening letters and oral statements. Based on

Barricelli's actions, the employees would assume that in order to

obtain a "referral," they would have to join the Bricklayers

Union; the Companies could reasonably have drawn the same

conclusion. Thus viewing the statements in the context of the

ongoing campaign, the Board had substantial support for its

conclusion that requiring a "referral" was tantamount to

conditioning continued employment on union membership.

The Companies acknowledge in their brief to this Court

that the record evidence could support an inference that union

membership was necessary for continued employment, but they state

that the evidence equally supports the opposite inference -- that

union membership was not necessary so long as the employees

obtained a referral. (Pet. Br. at 31). The Companies

misconstrue the substantial evidence test. Out task is to ask

whether the Board's conclusion rests on substantial evidence, not

whether some other conclusion is equally supportable. Universal 

Camera, 340 U.S. at 488; Teamsters Local Union No. 42 v. NLRB, 

825 F.2d 608, 612 (1st Cir. 1987); Andino v. NLRB, 619 F.2d 147, 

151 (1st Cir. 1980). The Companies' additional argument that the

Board's conclusions relate to two employers not involved in this

-10-

appeal is also without merit. The Board mentioned testimony

specific to those two companies, but the substantial evidence

outlined above relates equally to the present Companies.

Finally, substantial evidence supports the Board's

finding that the Companies terminated their employees for failing

to join the Bricklayers Union. The ALJ had concluded that

employees failed to show up for work only because of their

loyalty to the Carpenters Union. The Board properly concluded

that the ALJ's finding was merely speculative. The record

indicated that some finishers later joined the Bricklayers Union

and returned to work, undercutting the ALJ's conclusion that

loyalty prevented employees from working. The record also

contained statements by the Companies that work stoppages could

occur in Massachusetts and Connecticut, where they had collective

bargaining agreements with the Bricklayers Union, if employees in

those states did not join the Bricklayers Union. The Board's

conclusion that employees failed to show up for work based on a

belief that they would not be allowed to do so without first

joining the Bricklayers Union was therefore supported by

substantial evidence.

III.

For the foregoing reasons, the Board's order is

ENFORCED.

-11-